John Robert FLORENCE, Appellant,

v.

Noble CRAWFORD, Sheriff of Gregg County, and Eugene Bailey, Administrator of Good Shepherd Hospital, Appellee.

No. 7396.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 17, 1961.

Law Offices of Gordon R. Wellborn, Gordon R. Wellborn and Rex Houston, Henderson, for appellant.

Kenneth Dickerson, Asst. Dist. Atty., Longview, for appellee.

CHADICK, Chief Justice.

This is an appeal in a habeas corpus case that originated in the District Court of Gregg County. John Robert Florence was remanded to custody. The judgment of the trial court is affirmed.

On August 14[1] Mrs. P. K. McIntosh filed an application[2] in the County Court of

1. All dates herein refer to the year 1961.

2. This and all other written instruments mentioned herein, except the Protective

Custody Order of September 29, made use of printed forms designed to permit the insertion of additional matter in blank spaces.

Gregg County to have her son, John Robert Florence, temporarily hospitalized as a mentally ill person. Her sworn application contained the allegations required by Art. 5547–31.[3] The same day the County Judge signed a written order reciting that he found the application in proper form, and therein appointed two physicians to examine Florence and file in court a certificate of their examination. The order contained directions that Florence submit to the examination on the 28th day of August at 1:00 o'clock P.M. in the Probate court room in the court house at Longview. The instrument also ordered a hearing on Mrs. McIntosh's application for the same date and place of the examination at 2:00 o'clock in the afternoon. The order included directions for notice of the hearing to Florence, his guardian, or a responsible relative, and appointed an attorney ad litem to represent him.

A capias of the same date, August 14th, was issued by the Court Clerk and placed in the hands of the Sheriff. This instrument commanded the Sheriff to arrest Florence and bring him before the County Court. The Sheriff's Return on the capias under date of August 14th recites that it was executed by "hospital releasing to Gordon Welborn, his attorney". Bearing upon this return and in explanation of it, reference to testimony in the habeas corpus hearing is necessary. The evidence shows that following issuance of the capias the Sheriff took Florence into custody and placed him in the Good Shepherd Hospital at Longview. Florence was actually released from that hospital August 22nd.

Reverting to the chronological order of events, the next documents are two Certificates of Medical Examination for Mental Illness. The first is dated August 11 and filed in this case on August 14. The examining physician signing the certificate dated August 11 is not one of those ap-

pointed by the Judge's order previously mentioned. This certificate does not show the time the physician made the examination. The second certificate was signed by a physician appointed in the Judge's order, and shows the examination of Florence occurred August 15; it was dated August 15 and filed with the case August 18.

August 22nd as a culmination of the intervention of attorneys for Florence, the Gregg County Health Officer telephoned the Administrator of the Good Shepherd Hospital and directed him to release Florence. This same officer as attending physician caused to be made an entry of the same date on Florence's hospital chart the following: "May be discharged to care of lawyers when they arrive." The Administrator discharged the patient as ordered.

The same day Florence was released from the hospital an alias capias was issued by the County Clerk commanding the Sheriff to arrest Florence as in the first instance. The return shows the Sheriff took Florence into custody on September 28. Evidence in the record shows that the city police at Kilgore actually arrested and jailed Florence and transferred him to the Sheriff's custody, and the Sheriff removed him to the County jail at Longview.

By chronological sequence next in the record is an instrument dated and filed August 25, 1961, labeled "Order Setting Hearing Temporary Hospitalization". This Order was upon the same printed form that was used by the County Judge in making his order of August 14 heretofore mentioned. The instrument of the 25th recited that the County Judge had considered the application of August 14 requesting temporary hospitalization for Florence and found it sufficient. Paragraph (a) appointed a physician to examine Florence but the blank spaces therein for the insertion of date, time and place of ex-

3. Unless otherwise indicated, all articles mentioned refer to the Mental Health Code, Acts 1957, 55 Leg. p. 505, c. 243, as the same appears in Vernon's Texas Civil Statutes, Vol. 16A.

amination were not filled in. The physician appointed was not one of the two previously named in the Order of August 15, nor was he the one who had filed a certificate in the case dated August 11. The blanks in paragraph (b) relating to date, time and place of the hearing were not filled in. However, paragraph (c) and (d) were repetitious of the previous Order and paragraph (e) dealing with the appointment of an attorney ad litem had inserted the name of the same attorney appointed in the original Order of August 14.

At the time this instrument dated August 25 was introduced into evidence the blanks in the paragraph setting a hearing on the application had been filled in under circumstances hereafter related, and on its face a hearing was ordered for the 11th day of October at 10:00 o'clock A.M. in the probate court room at the court house in Longview.

A sharp attack was directed at the portion of this last instrument wherein the time and place of a future hearing is set out. The Deputy County Clerk having charge of the papers testified that on the day before the habeas corpus hearing she filled in the blanks setting the hearing for October 11, etc., at the direction of an Assistant District Attorney. She testified the Order until she made the insertion was in blank as to date of hearing, etc. A copy of this Order obtained by counsel for Florence before the Deputy Clerk made the change was introduced. This copy showed the space for insertion of the date of hearing, etc., to be in blank. In addition, one of counsel for Florence testified the County Judge was with him in Houston on the day the Deputy Clerk made the change.

In a typewritten Order signed and filed on September 29 the County Judge ordered the Sheriff to place and safely keep Florence in the Good Shepherd Hospital pending further order.

Application for habeas corpus was made October 2. The writ issued returnable October 3, at which time hearing was held and Florence remanded to the custody of the Sheriff. A transcript and statement of facts was filed in this court on October 4, and because of the nature of the case submission and oral argument were set for October 10.

It is here contended by brief and in oral argument that the trial court erred in remanding Florence to custody because: (1) Florence had been properly discharged from the hospital in which he was committed; (2) the alias capias was not legally sufficient for a detention (3) the Protective Custody Order dated September 29 was void in the absence of an order setting a hearing on the application for hospitalization for mental illness within fourteen days after September 28, and in the absence of a physician's examination of Florence within five days of that date; and (4) no extreme emergency existed for detaining Florence in jail from September 28 until the habeas corpus hearing on October 3.

█ There are several presumptions and rules of construction having a bearing on the disposition of this case. The Mental Health Code directs that its provisions, unless specifically supplanted or the context requires, shall be construed in accordance with Articles 10, 11, 12, 14, 22 and 23 of the Revised Statutes of 1925, as amended, Vernon's Ann.Civ.St. arts. 10–12, 14, 22, 23. Also, the procedure under consideration being wholly statutory, compliance with every form prescribed is prerequisite to its valid exercise. Clark v. Matthews, et al., Tex.Civ.App., 5 S.W.2d 221, n. w. h. Presumptions usually indulged in in favor of the regularity of a judgment are applicable to a Habeas Corpus case. See 39 C.J.S. Habeas Corpus § 120, p. 739.

█ Art. 5547–4, Subd. (e) defines "head of hospital" to be the individual in charge; Subd. (g) defines a "mental hospital" as a hospital operated for the primary purpose of providing inpatient care, and treatment of the mentally ill. The record in this case contains no proof that the Good Shepherd Hospital is a mental hospital. The dis-

charge of Florence from the Good Shepherd by the Administrator at the order of the County Health Officer was not a discharge from a mental hospital that is contemplated by Art. 5547–81. Of significance in Florence's discharge from the hospital is Art. 5547–35. By the terms of that article Florence was entitled to remain at liberty as no order placing him in protective custody was made prior to the time of his release. The article expressly permits the subject of an application for temporary hospitalization to remain at liberty in the absence of a Protective Custody Order or the other circumstances set out therein.

The legal sufficiency of the alias capias issued August 22 can not be decisive of any issue herein, as it appears the Protective Custody Order of September 29 is valid and constituted a sufficient warrant for holding Florence in custody. The validity of the Protective Custody Order requires a summing up of the established facts in greater detail.

Earlier in the statement of this case it is noted that there was filed two Certificates of Examination for Mental Illness, but that only one showed on its face that the examination occurred within five days of the time the certificate was filed in the case. Art. 5547–32, Subd. (a) requires examinations of this nature to be made within five days of the filing of the certificate. The certificate dated August 11 does not meet the statutory requirement and is ineffective to support further proceedings if Florence had been in custody at the time of the hearing. See Art. 5547–34.

An unchallenged order setting a hearing on the temporary hospitalization application for August 28 was entered August 14. About one week later, on August 22, Florence was discharged from the hospital and permitted liberty at the intervention of his legal counsel. A week after discharge, on August 28, the time set for hearing arrived but it was not had. Florence did not appear though the requirements of notice, etc., had been fully satisfied. Article 5547–36 authorized a hearing in the absence of the subject of the application, but in this instance the court was not authorized to proceed because of the provisions of Art. 5547–34. This last mentioned article directs that no hearing be had unless there is on file in the case two Certificates of Medical Examination for Mental Illness stating the patient on trial is mentally ill and requires observation and/or treatment in a mental hospital.

The legal issue is this: May a County Judge under these circumstances postpone a hearing on the application? The answer is in the affirmative. The Legislature has directed that the Mental Health Code be construed in accordance with settled rules of statutory construction, and in such way as to carry out the Legislative intent. The Legislature did not intend that the procedures for implementing the purposes of the Code should work arbitrarily or be paralyzed by an unusual or unreasonable construction. Certainly it could not be the legislative intent that the procedure enacted might be nullified at the whim of either the representatives of the State or the subject of a mental illness hearing. It seems most reasonable that the Legislature must have entertained the view, and so intended, that if for good cause a hearing could not be held as scheduled the Judge might, in the orderly discharge of his duties, postpone it. Such is the general rule in all civil court litigation. That the legislative intent could hardly be otherwise is fully supported by the provision that a mental patient may be permitted to remain at liberty by Art. 5547–35. To ascribe to the Legislature an intent that a mental patient might nullify previous applications and orders by not appearing at the time the hearing is set does not comport with orderly procedure or the purposes of the Act. It must be held that the County Judge was authorized to postpone a hearing. Without going into the sources evidencing it, it may be said that the Legislative intent is that an action of this kind when once set within fourteen days of the application shall be

tried with dispatch at the earliest time the circumstances of the case will allow.

■ It is also argued that the Protective Custody Order is void because the order, partially in blank, of the County Judge dated August 25 heretofore described did not set a hearing date. The evidence supports a conclusion that no order setting the case was intended to be made when the instrument was filed. At that time the hearing was set for August 28. Florence was not then in custody, and an alias capias had been issued three days previously for his arrest. Reasonably, the evidence may be understood as an effort by the County Judge to appoint a physician to examine Florence if he was taken in custody prior to the hearing date then set for August 28. The reasonableness of this construction is apparent when it is considered that one of the Certificates of Examination on file at the time this order issued was insufficient on its face. In order for a trial to proceed on August 28 another certificate of examination was necessary. Insertion later of a hearing date is not shown to have been authorized and would be a nullity. The Protective Custody Order was in no wise dependent upon a hearing date or absence thereof in this instrument.

The night of September 28 Florence was transferred to the custody of the Sheriff. The next day, September 29, the County Judge made the Protective Custody Order of that date, commanding the Sheriff to safely keep, etc., Florence at the Good Shepherd Hospital. This he had jurisdiction to do, as at that time there was pending before him an application for Florence's temporary hospitalization. Art. 5547–66 authorizes protective custody orders under certain conditions. The statute reads:

"If in the county court in which an Application for Temporary Hospitalization or a Petition for Indefinite Commitment is pending, *a Certificate of Medical Examination for Mental Illness* is filed showing that the pro-

posed patient has been examined within five (5) days of the filing of the Certificate and stating the opinion of the examining physician that the proposed patient is mentally ill and because of his mental illness is likely to cause injury to himself or others if not immediately restrained, the judge may order any health or peace officer to take the proposed patient into protective custody and immediately transport him to a designated mental hospital or other suitable place and detain him pending order of the court." (Emphasis added).

It is clear that only one Certificate of Examination for Mental Illness certifying the patient was examined within five days of its filing, etc., is required to be on file in the case as a prerequisite to the issuance of a Protective Custody Order. One such certificate was on file. All other prerequisites to the issuance are shown to have been complied with. The order is valid.

■ The next challenge to the trial court's judgment relates also to the validity of the Protective Custody Order; that is, that the record does not show an extreme emergency existed between September 28 and the date of the habeas corpus trial on October 3 requiring Florence to be confined in the county jail. Apropos to this contention is Subsection (b) of Art. 5547–67, to-wit: "No person shall be detained in protective custody in a non-medical facility used for the detention of persons charged with or convicted of a crime except because of and during an extreme emergency and in no case for a period of more than seven (7) days."

This subdivision must be given a reasonable interpretation in the light of the statute it supplants, the evil the Legislature sought to abolish, and the legislative purpose expressed in the Mental Health Code. Though it is not conclusive, the evidence easily may be understood as showing that Florence had been held in jail by the Sheriff from September 28 until October 3. At

least that is the most reasonable conclusion the testimony as a whole supports. The Custody Order itself directs the Sheriff to safely keep Florence in the Good Shepherd Hospital. It does not mention a jail.

The humane care, treatment and rehabilitation of the mentally ill, protection of the community from harm, elimination of the burden and disturbing effect of the mentally ill on the family, and restoring the mentally ill to useful life and place in society are among the stated purposes of the Act. The subdivision of the case quoted next above supplants a somewhat similar provision of repealed Art. 3193–c, V.A.T.S. The evil the Legislature sought to avoid was that of confining the mentally ill in the same facility with persons charged or convicted of violations of the criminal law. The intent of the statute is to afford the mentally ill hospital confinement, and to avoid confining them in the same manner as law violators. This statute affords a mental patient and those interested in his care a right to compel authorities to detain the patient outside of a jail.

It would be utterly repugnant to the expressed purposes of the Mental Health Code to discharge Florence from confinement in the Good Shepherd Hospital as ordered simply because the Sheriff may have found it convenient to confine him in jail. Florence's remedy under the circumstances of this case lies in compelling the authorities to house him as the law provides, not in discharge from custody. That this is a correct construction of the statute is apparent. Discharge would have the effect of releasing a person upon the community who is probably mentally ill and dangerous to himself and others according to the certificate on file, refuse him the care, treatment and rehabilitation that the State would provide, and would restore the disturbing effect that he as a mentally ill person has upon his family, while denying him a chance for rehabilitation and a useful place in society. This the Legislature never intended.

Counsel for Florence in the best tradition of the legal profession have zealously and intelligently defended every legal right given him under the circumstances of this proceeding and invoked all the safeguards to liberty with which the law guards every individual. It appearing, however, that Florence at this stage of the proceeding is confined in accordance with due legal process, all points of error are overruled and the judgment of the trial court is affirmed.

FANNING, J., concurs.

DAVIS, Justice (dissenting).

The Mental Health Code is rather strict in its provisions. Art. 5547–2 reads as follows:

"It is the purpose of this Code to provide humane care and treatment for the mentally ill and to facilitate their hospitalization, enabling them to obtain needed care, treatment and rehabilitation *with the least possible trouble, expense and embarrassment to themselves and their families and to eliminate so far as possible the traumatic effect on the patient's mental health of public trial and criminal-like procedures,* and at the same time to protect the rights and liberty of everyone. In providing care and treatment for the mentally ill, the State acts to protect the community from harm and to serve the public interest by removing the social and economic burden of the mentally ill * * * person on the family, and by care and treatment in a mental hospital to restore him to a useful life and place in society. It is also the legislative purpose that Texas contribute its share to the nation-wide effort through care, treatment and research to reduce the prevalence of mental illness." (Emphasis added).

There is a provision of the Code for "Voluntary Hospitalization". There is also

a provision for "Involuntary Hospitalization". John Robert Florence, a licensed attorney, is definitely committed, if he is, under the involuntary provision. He is a resident of Rusk County, Texas. He is incarcerated by Gregg County officers.

On August 14, 1961, his mother, Mrs. P. K. McIntosh, filed an application in the County Court of Gregg County to have her son, John Robert Florence, temporarily hospitalized as a mentally ill person. A capias was immediately issued by the County Clerk and placed in the hands of the Sheriff. This being an involuntary procedure, the Sheriff made his return on the Capias that the hospital had released John Robert Florence to Gordon Wellborn, his attorney.

There were not two doctor's certificates filed with the Application for Emergency Treatment, and the two doctors appointed by the County Judge to examine the boy did not make the report as required by law. Without these reports, they had no authority whatever to hold him more than ninety-six hours, as provided by Art. 5547–28. Art. 5547–30 requires an additional certificate by a doctor within 48 hours after the commitment in a hospital.

John Robert Florence was held in the first instance until August 22, 1961, at which time he was released. So far as the Application by Mrs. McIntosh is concerned, that brought the case to a close. There is no provision in the Mental Health Code for the issuance of an Alias Capias. The Alias Capias issued by the Deputy County Clerk was void. The County Judge signed an Order on August 25, 1961, labeled "Order Setting Hearing for Temporary Hospitalization". This Order is void because John Robert Florence had already been legally released as a result of the Affidavit and Application filed by Mrs. McIntosh on August 14, 1961.

On September 29 the County Judge entered a Protective Custody Order on John Robert Florence. This Order was void because he had already been released on the application that was filed by Mrs. McIntosh.

The Mental Health Code, as I see it, is a provision for the immediate protection of a person who is mentally ill. Mr. Florence was out of jail from August 22 to September 28 and apparently did not hurt himself, nor anyone else. The officers went into Rusk County with the Alias Capias and took him into custody. I can not see where the provisions for the involuntary hospitalization of him is applicable. At the time the appeal was presented to this court I would have granted John Robert Florence a bond pending the outcome of this appeal. I would still do so. And if the law is as I see it, I would have reversed the judgment of the trial court and ordered his release.