**Johnny LONG, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–02–01236–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 9, 2004.

Kim A. Parks, Houston, for appellants.

Kevin P. Keating, (District Attorney), Houston, for appellees.

Panel consists of Justices LESLIE BROCK YATES, EDELMAN, and GUZMAN.

## OPINION

LESLIE BROCK YATES, Justice.

This is an accelerated appeal from an order committing appellant Johnny Long, Jr. to the care of Kerrville State Hospital for extended mental-health services. A jury found by clear and convincing evidence that appellant continued to meet the criteria for involuntary commitment and required inpatient treatment. Based on these findings, the trial court ordered appellant committed for a 12–month period. In four issues for our review, appellant contends that the trial court erred in (1) admitting evidence of appellant's criminal acts committed while he was insane; (2) denying appellant's request for transfer from the Harris County Jail to the Harris County Psychiatric Center and then admitting evidence of appellant's behavior while housed at the jail; (3) proceeding with the commitment hearing without a recommendation for treatment on file from the single portal authority; and (4) holding the hearing after the previous commitment order had expired. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1998, a jury found appellant "not guilty by reason of insanity" of the 1995 murder of a woman at a Gerland's Food Fair in Harris County. Appellant was committed to Vernon State Hospital in accordance with Texas Code of Criminal Procedure article 46.03, section 4(d). Each year, appellant, diagnosed with psychosis due to a seizure disorder,[1] has been recommitted to inpatient care by court order, most recently at Kerrville State Hospital.

Prior to the expiration of the 2001 recommitment order, the State filed with the trial court an application to continue appellant's mental-health services. The application included medical certificates from Dr. Debra Osterman and Dr. Thomas Brandon, who each examined appellant by court order while he was at the Harris County Jail. Appellant was transferred from Kerrville State Hospital to the Harris County Jail around October 9, 2002, pending his recommitment proceeding. Appellant filed a motion to be transferred from the jail to the Harris County Psychiatric Center, and the trial court denied the motion the same day. The psychiatrists who examined appellant while at the jail concluded that appellant met the criteria for commitment to a mental-health facility, citing, among other things, lack of insight into the "suddenness or unexpectedness of onset of his psychotic episodes." On his behalf, the unit psychiatrist and chief executive officer of Kerrville State Hospital filed a letter and certificate recommending appellant be placed in a group home with follow up by the Harris County Act Team.

Appellant challenged his need for continued inpatient care in a November 2002 proceeding. A jury found appellant mentally ill and likely to cause serious harm to others. The jury also found appellant suffered severe and abnormal mental, emotional, or physical distress, experienced substantial mental or physical deterioration of his ability to function independently, and was unable to make a rational and informed decision regarding treatment. In addition, the jury concluded that appellant's condition was expected to continue for more than 90 days. The trial court then ordered appellant committed to Kerrville State Hospital, finding it the least restrictive appropriate setting available. This appeal followed.

---

1. Testimony from some of the expert witnesses suggests appellant may also be suffering from dementia.

## II. Analysis and Discussion

### A. Did the trial court err in allowing evidence of appellant's past crimes at the recommitment hearing?

Appellant first argues that the trial court erred by allowing the jury to consider evidence of past criminal acts committed while he was insane. He contends admitting this evidence is contrary to the intent of the Texas Mental Health Code[2] and violates his double-jeopardy and collateral-estoppel rights. In addition, appellant claims this evidence is not relevant and is unfairly prejudicial. We disagree.

During appellant's recommitment hearing, the State introduced evidence from a 1991 incident at Hermann Hospital, in which appellant attacked a nurse and hit a medical student with a shoe. According to testimony from the nurse, two hospital staff members died and another was injured when they fell through an air-conditioner vent while attempting to restrain the appellant. The State also raised the details of the 1995 death of a woman at a Gerland's Food Fair that led to appellant's murder charge and subsequent acquittal on the grounds of "not guilty by reason of insanity."

### 1. Double Jeopardy

■ Appellant claims the State's introduction of past criminal acts at an annual recommitment hearing is contrary to the intent of the Texas Mental Health Code and results in successive prosecution and punishment for the same offenses in violation of the double-jeopardy doctrine. Specifically, appellant argues that (1) when the court orders him committed each year, it amounts to multiple punishments for the same past offenses; and (2) when he is required to answer to a jury each year for the past criminal acts, it constitutes successive prosecutions.

■ The State argues that any objection to evidence of past crimes based on double jeopardy was waived by appellant's failure to object on that basis at trial. *See Gonzalez v. State*, 8 S.W.3d 640, 642–46 (Tex.Crim.App.2000).[3] To preserve a complaint for appellate review, a party must present a timely objection to the trial court. *See* Tex.R.App. P. 33.1(a)(1). A defendant has the burden to preserve a double-jeopardy objection at or before the time the charge is submitted to the jury. *Gonzalez*, 8 S.W.3d at 642. At the recommitment hearing, appellant did not object to evidence regarding his past crimes on the grounds that such evidence violated his double-jeopardy rights. Appellant's objections to the evidence went only to relevance and unfair prejudice. Because of the fundamental nature of double-jeopardy protections, however, appellant is excused from the preservation requirement when "(1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) when enforcement of usual rules of procedural default serves no legitimate state interest." *Id.* at 643; *Roy v. State*, 76 S.W.3d 87, 93 (Tex.App.-Houston [14th Dist.] 2002, no

---

2. Title 7, subtitle C of the Texas Health & Safety Code is known as the Texas Mental Health Code and will be referred to as such in this opinion. *See* Tex. Health & Safety Code § 571.001 (Vernon 1992).

3. Appellant is contending two double-jeopardy violations have occurred, multiple punishments for the same past offenses and successive prosecutions. The *Gonzalez* court dealt specifically with multiple punishments when

fashioning its two-part test. *See Gonzalez*, 8 S.W.3d at 642. The court noted the distinction between the two types of double-jeopardy claims, recognizing that a pretrial writ of habeas corpus is the usual procedural vehicle for raising successive-prosecution claims. *Id.* at 643 n. 9. To the extent *Gonzalez* applies to successive prosecutions, the result is the same as appellant's multiple-punishments claim.

pet.). The critical inquiry is whether the record before the appellate court clearly reflects a double-jeopardy violation. *Roy,* 76 S.W.3d at 93. We must find that appellant satisfied both prongs of the test to hold he can raise his complaint for the first time on appeal. *Id.*

◼ The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The double-jeopardy clause has been interpreted to prevent (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Bailey v. State,* 87 S.W.3d 122, 126 (Tex.Crim.App.2002).

In this case, the trial court conducts a hearing each year to determine whether appellant "continues to meet the criteria for involuntary commitment." TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(5) (Vernon Pamph.2001). The court can only recommit appellant if it finds that he meets one of the criteria set forth in Texas Mental Health Code section 574.035. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035 (Vernon Supp.2001). Appellant correctly states that these criteria are intended to assess appellant's *present* dangerousness both to himself and others and to assess appellant's *present* mental condition. *See id.; Campbell v. State,* 118 S.W.3d 788, 793 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (emphasis in original). This court considered the same issue on the merits in *Campbell v. State.* In that case, the court concluded that recommitment hearings, and the judgment following the hearings, are neither criminal prosecutions nor punishments. *See id.* The court reasoned that when a jury revisits the original crimes in a recommitment hearing, the crimes are used as additional background

information to assess appellant's improvement, not to re-adjudicate the original offense. *See id.* at 793–94.

◼ In addition, a commitment under article 46.03 is a civil matter, despite the underlying criminal prosecution. *See Campbell v. State,* 85 S.W.3d 176, 180 (Tex.2002). Double jeopardy applies only to criminal cases. *Ex parte Watkins,* 73 S.W.3d 264, 267 (Tex.Crim.App.2002). The civil nature of the proceeding can be overcome by a showing that the involuntary commitment is punitive or retaliatory in nature. *Campbell,* 118 S.W.3d at 794. To do so in this instance would require appellant to demonstrate that the current legislative scheme of treating mentally ill persons at psychiatric facilities is punitive or retaliatory. *See id.* Appellant has not offered evidence in this regard. In addition, reviewing past criminal acts on an annual basis does not "transform the hearing from a civil one to a punitive or retaliatory one." *Id.* Rather, the past acts provide a basis for determining treatment progress and current behavior. *See id.*

Therefore, we conclude that revisiting appellant's past criminal acts committed while he was insane does not constitute successive prosecution or punishment and, therefore, does not violate his double-jeopardy rights. Further, because there is no double-jeopardy violation clearly reflected on the face of the record before us, we need not address the second prong of the *Gonzalez* test. Consequently, appellant forfeited his right to raise for the first time on appeal a double-jeopardy violation by failing to object at trial.

**2. Collateral Estoppel**

◼ Appellant next contends that collateral estoppel bars the introduction of his prior criminal conduct into evidence. Specifically, appellant argues that the facts of the 1991 and 1995 crimes committed while

he was insane are being relitigated at the annual commitment hearings in violation of the collateral-estoppel doctrine. Because this issue was not raised below, the State maintains that appellant cannot raise it for the first time on appeal.

■ Like double jeopardy, collateral estoppel is also based on the constitutional right not to be placed in jeopardy more than once for the same crime. *See Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Ex parte Watkins,* 73 S.W.3d 264, 267 (Tex.Crim.App.2002). Assuming appellant can raise a collateral-estoppel violation for the first time on appeal if he meets the two-prong *Gonzalez* test,[4] we find that because the record does not clearly reflect a collateral-estoppel violation on its face, appellant has failed to meet the first prong of the test.

Appellant argues that each year the State relitigates the fact that three people have died because of acts he committed while he was insane. He contends these facts shift the focus from his present condition and place it on his past conduct. Appellant references only two cases in his argument, both of which address constitutionally based collateral estoppel. *See Ashe,* 397 U.S. at 445, 90 S.Ct. 1189 (finding collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy); *Ex parte Taylor,* 101 S.W.3d 434, 440–46 (Tex.Crim.App.2002) (analyzing collateral estoppel under *Ashe*

*v. Swenson*). This court will address the issue accordingly.

■ Under the collateral-estoppel doctrine, " 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Ex parte Watkins,* 73 S.W.3d at 268 (quoting *Ashe,* 397 U.S. at 443, 90 S.Ct. 1189). To determine whether collateral estoppel bars part or all of a subsequent prosecution, courts employ a two-step analysis in which they ask the following: (1) what facts were "necessarily decided" in the first proceeding; and (2) do those "necessarily decided" facts constitute essential elements of the offense in the second trial. *See Ex parte Taylor,* 101 S.W.3d at 440. The entire trial record must be examined to determine precisely what fact, or combination of facts, the jury necessarily decided. *See id.* at 441.

Appellant does not specify which facts were "necessarily decided" in the first proceeding nor does he address which proceeding constituted the first proceeding. In terms of the 1991 incident, there is no record of the trial court proceeding, if any, before us. The clerk's record begins with the complaint in the 1995 case. Therefore, this court cannot assess which facts were "necessarily decided" in a proceeding based on the 1991 incident.

As for the 1995 criminal act, a jury found appellant "not guilty by reason of insanity." *See Ex parte Watkins,* 73

---

**4.** The Court of Criminal Appeals has stated that, while double jeopardy and collateral estoppel are different concepts, the two doctrines are treated similarly when a collateral-estoppel claim is based on the constitutional rule set forth by the United States Supreme Court in *Ashe v. Swenson. Ex parte Watkins,* 73 S.W.3d 264, 268 (Tex.Crim.App.2002). The court has not specifically stated, however, that the two doctrines should be treated similarly for purposes of waiver. While it may be

possible that the *Gonzalez* test applies not only to waiver of double-jeopardy claims but also to constitutionally based collateral estoppel, the court did not address that issue in *Gonzalez. See Gonzalez,* 8 S.W.3d at 642–46. In the civil context, failing to present a collateral-estoppel argument to the trial court constitutes waiver. *See* Tex.R.App. P. 33.1(a); *Mayes v. Stewart,* 11 S.W.3d 440, 450 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

S.W.3d at 269 & n. 14 (stating the task of determining which historical facts a jury found to support an acquittal is made easier when given special issues, such as insanity at the time the offense was committed). No party to the recommitment hearing seems to be arguing that appellant was not insane when he committed the offenses. Assuming appellant is referring to the recommitment hearings themselves as the proceedings barred by collateral estoppel, his argument rests on the fact that the State continues to raise his past conduct each year. Even if this were enough to point the court to the facts appellant feels were "necessarily decided," appellant has not discussed how those "necessarily decided" facts are essential elements of the "offense in the second trial." In addition, appellant does not cite any authority finding collateral estoppel in the context of a recommitment hearing. *See Campbell,* 118 S.W.3d at 795. In fact, this court declined to find collateral estoppel under very similar facts in *Campbell. See id.* at 794–95. Therefore, as in the *Campbell* case, we do not find collateral estoppel applicable here. Accordingly, because the undisputed facts fail to show a collateral-estoppel violation on the face of the record, appellant cannot raise this issue for the first time on appeal.

### 3. Relevance and Prejudice

■ Appellant next contends that the trial court erred by admitting evidence of the criminal acts committed while he was insane because the evidence was not relevant to his present mental condition, and was unfairly prejudicial, serving only to inflame the jury. *See* Tex.R. Evid. 401, 402, 403.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts "without regard for any guiding rules or principles." *Id.* at 754. Evidence is relevant if it has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401.

To determine whether someone requires extended mental-health services under the Texas Mental Health Code, the jury must find by clear and convincing evidence that:

(1) the proposed patient is mentally ill;

(2) as a result of that mental illness the proposed patient:

  (A) is likely to cause serious harm to himself;

  (B) is likely to cause serious harm to others; or

  (C) is:

    (i) suffering severe and abnormal mental, emotional, or physical distress;

    (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

    (iii) unable to make a rational and informed decision as to whether or not to submit to treatment;

(3) the proposed patient's condition is expected to continue for more than 90 days; and

(4) the proposed patient has received court-ordered inpatient mental health services under this subtitle or under Article 46.02, Code of Criminal Procedure, for at least 60 consecutive days during the preceding 12 months.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (Vernon 2003). To be clear and convincing under subsection (a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *See id.* § 574.035(e).

This court addressed a similar relevance issue in *Campbell.* In that case, the appellant contended that his actions while criminally insane were not relevant to the findings required under section 574.035 of the Texas Mental Health Code. *See Campbell,* 118 S.W.3d at 795. In concluding the evidence was relevant to the jury's function at trial, the court stated that evidence of past criminal conduct provides a benchmark by which experts, and the jury, can measure someone's emotional and psychological progress. *Id.* at 796. According to expert testimony in this case, knowledge of appellant's past acts was important to providing an accurate and fair medical evaluation. One expert expressed concern regarding appellant's inability to grasp the significance of taking his medication and the serious consequences of not taking it. At least one expert testified that appellant continues to blame others for both the 1991 and 1995 incidents, claiming Hermann Hospital should have blocked off what he thought was an elevator shaft in the first instance and citing his doctor for changing his medication as the reason for the latter act. Without some reference to the details of the crimes, it would be difficult for the experts to discuss the consequences of appellant's noncompliance with medication, which, according to testimony, had occurred while appellant was at the Harris County Jail shortly before the hearing. In addition, the experts would have been very limited in their discussion of appellant's lack of understanding as to what happened during the 1991 incident and his placing of blame on others for both the 1991 and 1995 incidents, all of which experts found important in assessing appellant's current mental-health status.

Therefore, we conclude the trial court did not abuse its discretion by determining that evidence of appellant's past criminal conduct is relevant to a determination of his present mental-health condition under the Texas Mental Health Code.

■ Appellant also argues that the trial court abused its discretion by finding that the evidence was not unfairly prejudicial. When a party objects under Texas Rule of Evidence 403, a trial court must conduct a balancing test, weighing the danger of prejudice against the probative value of the evidence. *Waldrep v. Tex. Employers Ins. Ass'n,* 21 S.W.3d 692, 703 (Tex.App.-Austin 2000, pet. denied). The fact that evidence has some prejudicial effect is insufficient to warrant its exclusion. *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 772 (Tex.App.-Corpus Christi 1999, pet. denied). Under rule 403, relevant evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403 (emphasis added). "Unfair prejudice" means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Weidner v. Sanchez,* 14 S.W.3d 353, 365 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (quoting *Turner v. PV Int'l Corp.,* 765 S.W.2d 455, 471 (Tex.App.-Dallas 1988, writ denied per curiam, 778 S.W.2d 865 (Tex.1989))).

Appellant contends the State's continual references to the details of the 1991 and 1995 criminal acts committed while he was insane served only to inflame the jury, particularly the State's "theme" of urging

the jury to weigh the importance of appellant's rights with society's rights to be protected from him. During appellant's recommitment hearing, the jury heard testimony from eyewitnesses to the 1991 and 1995 criminal acts committed while appellant was insane. The State also introduced photographs from the 1991 incident and a diagram of the store where appellant shot a woman in 1995. While this may have had some prejudicial effect, the jury also heard extensive expert testimony about appellant's mental state, his behavior over the previous year, both at the Kerrville facility and at the Harris County Jail, and recommendations regarding his release or continued commitment. In fact, much of the testimony surrounded appellant's medication while at the Harris County Jail in the weeks preceding the hearing. Because the evidence of his past conduct was highly probative of appellant's progress, this court cannot conclude that the trial court abused its discretion when it allowed evidence of appellant's past acts committed while insane.

Appellant's contentions that the evidence should have been excluded on the basis of double jeopardy, collateral estoppel, relevance, and unfair prejudice lack merit. Accordingly, we overrule appellant's first issue.

**B. Did the trial court err by denying appellant's motion to transfer from Harris County Jail to a mental-health facility and allowing evidence of appellant's behavior while at the jail?**

In his second issue, appellant contends the trial court erred when it denied his request for transfer from the Harris County Jail to the Harris County Psychiatric Center. Appellant claims he was harmed by the trial court's denial of transfer because (1) the State repeatedly informed the jury that appellant was housed at the jail; (2) the jury observed appellant in jail clothing;[5] and (3) the trial court allowed evidence of his behavior while housed at the jail.

On October 28, 2002, appellant filed a motion to be transferred from the Harris County Jail to Harris County Psychiatric Center. The trial court denied the order on the same day. According to testimony, appellant had been housed at the jail since at least October 9, 2002, presumably while he awaited his commitment proceeding. During that time, expert witnesses from the jail testified that appellant refused to take medication, did not receive his antipsychotic medication for approximately 21 days, and failed to attend a class held at the jail.

▬ In support of his argument that the trial court erred in denying his transfer and in allowing evidence of his behavior at the jail, appellant cites provisions of the Texas Mental Health Code dealing with emergency detention, detention when someone is under protective custody, and a general provision regarding the housing of patients in the "least restrictive appropriate setting."[6] *See* TEX. HEALTH & SAFETY

5. In its brief to this court, the State explains in a footnote that appellant's counsel on appeal informed the State that the argument pertaining to appellant's clothing was in error and, as a result, appellant planned to file an amended brief. Appellant has not filed an amended brief with the court; however, the record does not indicate appellant was in jail clothing for the commitment proceeding. When asked to identify him in the courtroom, witnesses consistently stated that appellant was wearing a brown or tan shirt. One witness identified appellant in a "gray-colored shirt with a black pattern." Because appellant's argument has no basis in the record, this court will not address it.

6. Appellant also cites generally to other sections of the Mental Health Code which refer to commitment of mentally ill persons to

CODE §§ 571.004, 573.001, 574.027 (Vernon 2003). In addition, appellant cites a provision of the Local Government Code, which states:

(a) A person suspected to be or adjudged insane may not be held in a county jail unless the person:

    (1) demonstrates homicidal tendencies; and

    (2) must be restrained from committing acts of violence against other persons.

(b) A person requiring restraint under this section may be held in a county jail for not more than 24 hours. The person shall be kept under observation at all times.

(c) At the end of the 24–hour period, the person shall be released or taken to a hospital or mental hospital.

TEX. LOCAL GOV'T CODE § 351.014 (Vernon 1999). The State concedes that appellant's citation to these provisions is accurate and does not contend the trial court was correct in denying the motion. However, even if the trial court erred in denying appellant's motion to transfer, the record indicates appellant has been returned to a mental-health facility due to the court's order committing him to Kerrville State Hospital. Therefore, the issue of his confinement, while arguably erroneous at the time, is now moot. *See Florence v. Crawford*, 351 S.W.2d 77, 83 (Tex.App.-Texarkana 1961, no writ) (denying discharge of appellant under protective custody order provision of Texas Mental Health Code when appellant was properly housed in hospital, rather than jail, by the appellate stage of the proceeding).

Appellant also argues the trial court erred in admitting evidence of his behavior while he was housed at the Harris County Jail. The State contends appellant is precluded from raising this issue on appeal because he did not object to the evidence at trial on the ground that he was housed at the jail improperly. To preserve error, the complaint on appeal must comport with the objection lodged in the trial court. *See* TEX.R.APP. P. 33.1(a). During the testimony regarding his stay at the jail, appellant objected only four times, stating speculation and repetition, as well as relevance and prejudice with regard to his past criminal conduct. Appellant did not object on the grounds he is now claiming on appeal. Accordingly, we overrule appellant's second issue.

**C. Did the trial court err by conducting a hearing without a "Recommendation for Treatment" as required by the Mental Health Code?**

In his third issue, appellant contends that the trial court erroneously conducted the recommitment hearing without a "Recommendation for Treatment" from the proper authority on file pursuant to Texas Mental Health Code section 574.012.[7] This section states that, prior to a hearing, the court shall direct the local mental health authority in the county in which an application is filed to file with the court a recommendation for the most appropriate treatment alternative for the proposed patient. TEX. HEALTH & SAFETY CODE ANN. § 574.012(a)-(b) (Vernon 2003). The section further provides that a "hearing on an application may not be held before the recommendation for treatment is filed unless the court determines that an emergen-

---

mental-health facilities. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.036, 574.037, 574.041, 574.046.

7. Appellant contends the recommendation must come from the single portal authority for the county. This section was amended in 2001, prior to appellant's commitment hearing, and this language is no longer included.

cy exists." *Id.* § 574.012(d). A review of the record reveals no objection or motion made by appellant on the grounds that the hearing was invalid due to the lack of a recommendation for treatment by the single portal authority. Because the appellant did not object on this basis, he has not preserved the issue for review on appeal. *See* TEX.R.APP. P. 33.1(a). Appellant's third issue is overruled.

**D. Did the trial court err in holding a recommitment hearing after the previous order had expired?**

 In his fourth issue, appellant contends that the trial court erred when it conducted his recommitment hearing after the previous commitment order had expired. Specifically, appellant claims that article 46.03, section 4(d)(5) mandates such a hearing be held prior to the previous order's expiration, and by not complying with that requirement, appellant was entitled to immediate release. We disagree.

Appellant is correct that article 46.03, section 4(d)(5) requires a court "upon the expiration of a commitment order ... [to] discharge [ ] the acquitted person or on the motion of the district or county attorney or on its own motion [ ] hold a hearing, prior to the expiration of the commitment order...." *See* TEX.CODE CRIM. PROC. ANN. art. 46.03, sec. 4(d)(5) (Vernon Supp.2004). The Texas Supreme Court has addressed appellant's argument and concluded that article 46.03, section 4(d)(5) does not demand release just because a hearing is delayed. *See State v. Roland,* 973 S.W.2d 665, 666 (Tex.1998). The court noted that, while article 46.03, section 4(d)(5) supplies a procedural timeline, it does not enumerate the consequences for failure to hold a timely hearing. *Id.* The court found the legislature clearly intended the judiciary to oversee such proceedings and inferring automatic release due to delay, especially when the State could demonstrate the appellant should not be released, defeated that purpose. *See id.* at 667.

Here, the jury found the State demonstrated by clear and convincing evidence, including the testimony of Drs. Debra Osterman and Thomas Brandon, that appellant met the criteria for extended mental-health services. Because the legislature intended judicial oversight of appellant's release under article 46.03, section 4(d)(5), the trial court did not err when it began recommitment proceedings after the expiration of appellant's prior commitment order. Accordingly, we overrule appellant's fourth issue.

The judgment of the trial court is affirmed.