Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-10-00245-CR

Travis C. **MENDIOLA**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 281959
Honorable Monica Guerrero, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  July 6, 2011

AFFIRMED

A jury convicted appellant, Travis C. Mendiola, Jr., of deadly conduct against a family member. The trial court assessed punishment at one-year confinement, probated for two years, and a $4,000 fine. On appeal, Mendiola raises several issues on appeal, including that the evidence is insufficient to support the verdict, his criminal prosecution is barred by double jeopardy, trial counsel rendered ineffective assistance, and the trial court erred on various evidentiary rulings. We overrule all issues and affirm the trial court's judgment.

## SUFFICIENCY OF THE EVIDENCE

A person commits the offense of deadly conduct "if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a) (West 2011). "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." *Id.* § 22.05(c). As support for his argument on appeal that the evidence is insufficient, Mendiola points to testimony that a prior request for a protective order against him was denied based on the same conduct alleged in this criminal prosecution, his daughter lied about witnessing the incident at the basis of the criminal charge, and two witnesses who testified at the protective order hearing, but not at the criminal trial, stated he did not have a gun.

In a sufficiency challenge to the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* at 899.

Mendiola lived across the street from a house owned by the complainant, his brother Anthony Mendiola. Anthony testified that the trouble between himself and his brother began when Anthony purchased his house from their parents in 2001 and his brother was angry over the purchase. Anthony said he moved out of the house in January 2009 because his brother "was constantly threatening" Anthony and his family. About three months later, on the day of the incident giving rise to the criminal charge against Mendiola, Anthony was in the backyard of his house looking at a fallen tree when he heard a car's horn and his brother yelling for him to

"come outside . . . and come fight him." Anthony ignored his brother. Anthony said that when he went to his vehicle, which was parked in the driveway, his brother came "out of nowhere real fast, pulls in his driveway, then he comes running up to me and starts with the, you know, . . . why won't I fight him, you know, I'm a momma's boy." When Anthony asked his brother to leave, his brother became more irate. Because Anthony refused to fight and showed no fear, Mendiola ran back into his house.

After a few seconds, Mendiola came out of his house, and ran toward Anthony waving a black pistol wrapped with a shirt. Anthony said his brother stopped at the property line, pointed the gun at him, and said "he was dying and he was going to take me with him, and just - - so he was going to kill me right there." Anthony told his brother to "go ahead and kill me. I'm tired of hiding . . . ." According to Anthony, his brother did not know what to do, so "he just said, well, I'm not going to do it now. . . . I'm going to get you when you least expect it." Mendiola went back to his house, and having received a 911 call from Anthony, the police arrived about fifteen minutes later. Anthony did not know if anyone else was present at his brother's house. Anthony heard the police speak to his brother and he heard his brother tell the police that he [Anthony] was the one who had the gun. Anthony, who admitted he was afraid of his brother, said he did not have a gun with him on the day of the confrontation.

Anthony testified that on the Thursday before his brother's criminal trial commenced on Monday, Mendiola's daughter, Angel, called him to say she had seen what happened and she was willing to testify. The next day, Anthony called a victim's advocate who told him to tell Angel to come in on Monday. At trial, Angel testified she was in the living room of Mendiola's house when she heard him slam the door, then she heard him "digging around" trying to find something, she heard him drop something, and then he slammed the door again. She said he

seemed to be in a hurry. Angel said she went to the door of the house and saw her father wrapping something in a white towel or shirt, and then he started charging over to Anthony's house. She could not hear what Anthony said to her father, but she heard her father telling Anthony that he wanted to fight him. She saw her father point a black gun at Anthony. Angel explained she did not want to testify, but she believed her father needed help because "he's crazy." Angel said only her mother and she were in the house during the confrontation.

One of Mendiola's neighbors, Christelia Cantu, testified she saw Mendiola arguing with Anthony and Mendiola waving a dark-colored handgun. She did not recall the gun being wrapped in anything, but she saw something like a towel, rag, or shirt hanging over Mendiola's arm. She also said that, although she could not see Anthony very well, she could see that he was not armed. A police officer who interviewed Anthony, Cantu, and Cantu's sister said that the statements made by Cantu and her sister corroborated Anthony's statement. This same officer said Mendiola's son, who came to the door of Mendiola's house, told the police where to find the weapons inside the house. The police collected one rifle, one chrome handgun, and ammunition. No black handgun was found.

Mendiola's wife, Brenda, testified on Mendiola's behalf. Brenda said that on the day of the incident, her husband had brought her home from the hospital. She said Angel was never at the house on that day, and her son arrived at the house after the incident. Brenda said her husband left the house after they returned from the hospital to buy a bottle of tea. She heard a car horn, and when she looked out the window, she saw her husband at his car with the hood up trying to detach the horn wires. She saw Anthony walk around the side of his house and he "threw a finger" at her husband. She walked outside and heard Anthony say he was going to kill her husband. According to Brenda, her husband did not come into the house to get a gun, and he

does not own a black handgun. She said she saw her husband and Anthony arguing, and her husband with his shirt up.

Finally, Mendiola testified on his own behalf. He also said Angel was not at the house on the day of the confrontation with his brother. Mendiola said Anthony has been "stalking" his family for almost twenty years. He testified Anthony was "throwing the finger" and blaming him for Anthony's dogs being out of the yard. Mendiola ignored his brother, who then put his hand behind his back, pulled out a gun, and threatened to kill Mendiola. Mendiola said he lifted up his shirt and turned in circles to show he was not armed. He later testified he did not see a gun in Anthony's hand, he only heard from other witnesses – who did not testify at trial and did not give statements to the police – that Anthony pulled out a gun. Mendiola said he did not take his brother's threat seriously, and he walked back to his house. He denied pointing a gun at Anthony or threatening to kill Anthony. Mendiola said he told the police he had guns in the house, but that he did not have any weapon on him.

Although there was some inconsistency in the witnesses' testimony, the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. Based on our review of all the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found the essential elements of the charged offense beyond a reasonable doubt.

## DOUBLE JEOPARDY/COLLATERAL ESTOPPEL

After the confrontation between the two brothers, but before the underlying criminal trial, Mendiola was the subject of a hearing on an application for a protective order prosecuted by the District Attorney's Office on Anthony's behalf. Following a hearing, the application was denied. On appeal, Mendiola asserts that because the application involved the same material facts as the

underlying criminal prosecution and the application was denied, the doctrines of double jeopardy and collateral estoppel bar any criminal prosecution based upon the same facts.

Mendiola did not raise a double jeopardy objection below. A criminal defendant bears the burden to "preserve, in some fashion, a double jeopardy objection at or before the time the charge [was] submitted to the jury." *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). However, because of the fundamental nature of double jeopardy protection, a double jeopardy claim may be raised for the first time on appeal when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and (2) enforcement of the usual rules of procedural default serves no legitimate state interests. *Id.* at 643; *Honeycutt v. State*, 82 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. ref'd). The critical inquiry is whether the appellate record clearly shows a double jeopardy violation. *Long v. State*, 130 S.W.3d 419, 424 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Mendiola must satisfy both prongs of the *Gonzalez* test in order to raise his complaint for the first time on appeal. *Id.*

We conclude Mendiola has not satisfied the first prong of the *Gonzalez* test because the record on appeal does not contain the proceedings on the application for a protective order. Although Mendiola attached to his appellate brief a copy of the application for a protective order and a partial transcript of the hearing on the application, this court may not consider documents that are not contained within the clerk's record or the reporter's record.[1] TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."). Assertions in an appellate brief that are not supported by the record will not be accepted as fact. *Vanderbilt v. State*, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981). Therefore,

---

[1] Mendiola did not raise double-jeopardy in his motion for new trial or otherwise attach these documents as exhibits to his motion.

because a double-jeopardy violation is not clearly reflected on the face of the record before us,[2] Mendiola forfeited his right to raise for the first time on appeal a double-jeopardy violation by failing to object at trial.[3]

## INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate, by a preponderance of the evidence, that: (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* A reviewing court cannot speculate as to the reasons why trial counsel acted as he did; rather, a reviewing court must presume that the actions were taken as part of a strategic plan for representing the client. *See Young v. State*, 991 S.W.2d 835, 837–38 (Tex. Crim. App. 1999).

---

[2] Because Mendiola did not raise his collateral estoppel objection before the trial court, it is not preserved for our review. However, assuming he can raise this objection for the first time on appeal if he meets the two-prong *Gonzalez* test, we likewise conclude the record does not clearly reflect a collateral estoppel violation on its face.

[3] We also note that several Texas courts have rejected double-jeopardy challenges to criminal prosecutions following the entry of family-violence protective orders authorized by the Texas Family Code. *See, e.g., Harris v. State*, 164 S.W.3d 775, 782 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Certainly, the Legislature never intended a protective order to constitute a 'prosecution' or a 'punishment.' In fact, it has authorized the issuance of a protective order and the subsequent criminal prosecution for the same underlying conduct."); *Ex parte Chairez*, No. 08–00–00083–CR, 2001 WL 63033, at *3 (Tex. App.—El Paso Jan. 25, 2001, no pet.) (not designated for publication) (holding that the purpose of Family Code provisions authorizing protective orders to prevent domestic violence was to "protect the victims, not to punish the offenders"); *Harren v. State*, No. 03–99–00752–CR, 2000 WL 766263, at *2 (Tex. App.—Austin June 15, 2000, no pet.) ("As the name implies, the purpose of a protective order is to protect against future acts of family violence.").

We first note that Mendiola did not raise ineffective assistance of counsel in his motion for new trial. Thus, trial counsel was not afforded an opportunity to explain his actions at an evidentiary hearing on a motion for new trial. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). As discussed below, none of trial counsel's acts or omissions challenged by Mendiola can be described as "outrageous."

In his first complaint, Mendiola asserts trial counsel was ineffective because counsel did not call as witnesses two neighbors who testified at the protective order hearing. As support for his contention that these witnesses would have testified it was Anthony who drew the gun, Mendiola attached to his appellate brief portions of the transcript from the hearing. This court may not consider documents that are not contained within the clerk's record or the reporter's record. TEX. R. APP. P. 34.1. Also, Mendiola's complaint requires this court to improperly speculate as to why defense counsel did not call the neighbors as witnesses.

Mendiola next asserts defense counsel failed to file a motion for discovery and obtain an order requiring the District Attorney's Office to produce a list of the witnesses it intended to call at trial. According to Mendiola, counsel's failure to seek such discovery prevented him from establishing a valid objection to the "surprise" testimony of his daughter, Angel. In a related issue, Mendiola asserts counsel was ineffective for permitting Angel to testify and by "not pursuing a more strident cross-examination." According to Anthony's uncontradicted testimony, a victim's advocate was made aware of Angel's existence on the afternoon of the Friday before trial commenced Monday morning, at which time Angel testified. Therefore, even if Mendiola's trial counsel had filed a request for the witness list, her name would not have appeared on it any

earlier than Friday afternoon. At trial, when the State called Angel, defense counsel's objection that she was not listed as a witness in any police report or in the District Attorney's files was overruled. Defense counsel did not assert any "surprise" prevented him from effectively cross-examining Angel. Our review of Angel's testimony reveals defense counsel took Angel on voir dire prior to her testimony for the State and counsel conducted an effective cross-examination. Thus, Mendiola has not rebutted the presumption that counsel provided reasonable professional assistance.

Mendiola next lists a variety of instances in which defense counsel either failed to object or raised only a "weak" objection to matters Mendiola contends were not admissible. Mendiola also complains counsel was ineffective because counsel did not subpoena Mendiola's son. Mendiola does not indicate how his son's testimony would have helped him except to contradict Angel's testimony that she was present at the house during the incident. Mendiola also asserts counsel was ineffective because he did not move to quash two search warrants. Mendiola concedes defense counsel repeatedly objected at trial to the admission of evidence regarding the two weapons that were recovered from his house. However, he does not explain the basis on which the warrants could have been quashed pretrial except to complain that the warrants referred to a "black" handgun that was not recovered from Mendiola's house. Because the record is silent, we will not speculate about the reasons for counsel's actions or decisions.

Mendiola contends defense counsel had a conflict of interest because counsel had previously represented Angel on a criminal charge. On appeal, Mendiola states only that representing him when Angel was a witness against him "calls into question the doctrine of serving two masters . . . [when] [t]he attractive young daughter . . . appears mysteriously the day of the criminal trial." A showing of a potential conflict of interest is not sufficient to constitute

an actual conflict of interest. *Ex parte McFarland*, 163 S.W.3d 743, 759 n. 52 (Tex. Crim. App. 2005); *James v. State*, 763 S.W.2d 776, 780 (Tex. Crim. App. 1989) ("potential, speculative conflicts of interest" may not be "elevated to the position of actual, significant conflicts"). Because Mendiola's assertion of a conflict amounts only to speculation, it cannot serve as a basis for concluding counsel was ineffective.

Mendiola next asserts counsel rendered ineffective assistance by not pursuing his motion for new trial. A hearing on Mendiola's motion for new trial commenced on March 18, 2010. At the hearing, the trial court expressed its concern that Mendiola and his attorney may be in conflict with one another based on Mendiola's complaints about his attorney. When asked if he wanted to continue to represent Mendiola, counsel responded as follows:

> [W]e do have a difference of opinion about what happened and I think maybe - - I'm not saying that I did, but I think at some point maybe there may be an issue with regard to ineffective assistance of counsel. I think that needs to be raised by a different lawyer and they can examine what it is that I did or didn't do, and that's where we're having an issue.
> . . .
> . . . I also would like the Court to consider giving him other counsel and I'll be more than glad to give them any information they need that I did during the trial.

The trial court allowed counsel to withdraw. On March 23, 2010, new counsel was appointed for Mendiola. On May 18, 2010, the trial court conducted a hearing on the motion to withdraw filed by the second attorney appointed to represent Mendiola. The second attorney stated that because he was such close friends with the first attorney, he believed another attorney should be appointed to represent Mendiola. The court granted the motion to withdraw, and on that same date, appointed the Bexar County Public Defender's Office to represent Mendiola. No action was taken on Mendiola's motion for new trial and it was overruled by operation of law.

On appeal, Mendiola does not identify with any specificity the matters he would have raised at a new trial hearing, nor does he elaborate on what evidence or testimony he would have brought forward at the hearing. Instead, Mendiola complains only that the second attorney had adequate time to contact the first attorney immediately after his appointment, discuss the case at that time, and decide then, rather than two months later, to file a motion to withdraw.

The purpose of a hearing on a motion for new trial is to (1) decide whether a cause should be retried and (2) prepare a record for presenting appellate issues if the motion is denied. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). A new trial hearing is not an absolute right and is not required when the matters raised in the motion for new trial are determinable from the record. *Id.* Such a hearing is only required when the defendant (1) raises matters not determinable from the record and (2) establishes the existence of reasonable grounds showing he could be entitled to relief. *Id.* at 338-39. Here, Mendiola alleged in his motion for new trial matters not determinable from the record—his son would have testified Angel was not present during the incident and two neighbors would have testified that he did not draw a weapon. However, Mendiola was also required to show reasonable grounds exist for a new trial. As a prerequisite to a hearing, his motion had to be supported by an affidavit, either of himself or someone else, specifically setting out the factual basis for the claim. *Id.* at 339. The affidavit need not establish a prima facie case, or even reflect every component legally required to establish the relief requested. *Id.* "It is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim." *Id.* Mendiola's motion for new trial was not accompanied by an affidavit or otherwise verified. Therefore, he has not shown his entitlement to a new trial hearing. Accordingly, on this record, we cannot say Mendiola has shown his attorneys were ineffective for not pursuing a hearing on his motion for a new trial.

## ADMISSIBILITY OF EVIDENCE

In his final two issues, Mendiola complains the trial court erred by overruling objections to certain evidence he contends was inadmissible. Mendiola first lists instances of testimony he believes were improperly admitted over counsel's objections. However, Mendiola provides no substantive argument or authoritative support for his contentions; therefore, this complaint is waived as inadequately briefed. Mendiola also asserts the court erred in allowing the prosecutor to introduce unobjected-to inadmissible evidence, which Mendiola contends amounted to "fundamental error." *See* TEX. R. EVID. 103(d) ("In a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court."). Because trial counsel did not raise an objection at trial to the complained-of testimony elicited by the State, any complaint on appeal is waived. Further, Mendiola's reliance on Rule of Evidence 103(d) is misplaced because he has provided no substantive argument or authoritative support for his contention that these alleged errors affected his substantial rights.

## CONCLUSION

We overrule Mendiola's issues on appeal and affirm the trial court's judgment.

Karen Angelini, Justice

Do Not Publish